16560

LONG MOTOR LINES, INC. v. HOME FIRE & MARINE INS. CO. OF CALIFORNIA

(67 S. E. (2d) 512)

336

*Mr. J. Perrin Anderson,* of Greenwood, *for Appellant,*

*Messrs. Smith, Field, Doremus & Ringel,* of Atlanta, Georgia, and *Mays, Featherstone & Bradford,* of Greenwood, *for Respondent,*

November 12, 1951.

OXNER, Justice.

This is a suit on a motor transit policy issued by respondent to appellant. It is here on appeal from an order sustaining a demurrer to the complaint. The question involved is one of coverage.

Appellant is engaged in business as a common carrier of freight and merchandise under a license issued by the South Carolina Public Service Commission. At the time hereinafter mentioned, it had in force with respondent a policy insuring

its liability for direct loss or damage to any property transported caused, among other perils, by

"(b) Accidental collision of the vehicle with any other vehicle or object, excluding however, contact with any portion of the roadbed, curbing, rails or ties of street, steam or other railroad, any stationary object while backing for loading or unloading, and excluding any collision of the load with any object."

"(e) Flood (meaning rising of streams or navigable waters)".

"(f) Perils of the seas, lakes, rivers or inland waters while on ferries."

The loss in controversy is alleged in the complaint to have occurred in the following manner: "That on or about the 16th day of February, 1946, Long Motor Lines hauled a load of furniture and household goods belonging to Mrs. Dorothy H. Wise from her home at Greenwood, South Carlina, to her home at Crescent Beach, Horry County, South Carolina. That truck of Long Motor Lines was driven on the beach or strand along a route where it was customary for trucks and other motor vehicles to be driven, where it accidentally collided with a depression in the beach and became stuck or imbedded in the sand, making necessary a transfer of the goods and furniture from plaintiff's truck and before the same could be unloaded the tide arose. That the furniture became damaged by the salty water and also that several of the articles of furniture were scratched or broken in the removal."

It is further alleged in the complaint that Mrs. Wise brought suit against appellant for the above loss; that respondent refused to defend, claiming that the loss was not covered in the policy; and that said action resulted in a judgment in favor of Mrs. Wise for $2,500.00, which had been paid by appellant. The instant action was then brought against the insurance company to recover the amount of the judgment and costs paid by appellant, together with the transportation charges on said shipment.

In sustaining the demurrer to the complaint, the Court below held that the alleged loss was not covered by the policy. The three provisions previously quoted, all of which are relied on by appellant to show coverage, will be discussed in the order in which they were heretofore enumerated.

There is some diversity of opinion as to whether or not the coming of a motor vehicle into sudden and violent contact with some part of the roadbed constitutes a "collision" with an "object" within the meaning of a clause purporting to insure against damage by collision. We are not concerned in the instant case with this conflict in the authorities, for in clause (b) insuring against accidental collision with any object, contact with any portion of the roadbed is expressly excluded. It is alleged in the complaint that the truck "was driven on the beach or strand along a route where it was customary for trucks and other motor vehicles to be driven, where it accidentally collided with a depression in the beach and became stuck or imbedded in the sand." If the truck became merely stuck or bogged down upon a portion of the beach because the surface was not sufficiently firm to withstand the weight, there would be a serious question as to whether there was a collision. See *Aetna Casualty and Surety Company v. Cartmel*, 87 Fla. 495, 100 So. 802, 35 A. L. R. 1013. *Cp. Long v. Royal Insurance Co.*, 180 Wash. 360, 40 P. (2d) 132, 105 A. L. R. 1423. We shall assume, however, that the allegations of the complaint are sufficient to show a collision with some portion of the beach. The question for decision, therefore, is whether or not any such collision was with a "portion of the roadbed" so as to be excluded from the coverage provided in clause (b).

The authorities are not in exact accord as to the meaning of the term "roadbed" as used in a policy of this kind. 45 C. J. S., Insurance, § 798. But it seems to be uniformly held that the term includes that portion of the road which is used for travel. While ordinarily the strand of a beach is not used for such purpose, it is alleged in the complaint that the accident occurred while

the truck was being driven on the beach "along a route where it was customary for trucks and other motor vehicles to be driven". This undoubtedly constituted the portion of the beach so used as a roadbed within the meaning of the policy. The major contention of appellant is that the phrase "portion of the roadbed" refers only to something "of a permanent nature or which is designed as, or intended to be, a part of the roadbed", and it is argued that "the depression in the strand was certainly not a designed or intended part of the roadbed". It could hardly be said that any part of the beach was "designed" or "intended" for use as a highway but according to the complaint the public was using it for this purpose. Under these circumstances, the "depression in the beach" constituted a portion of the roadbed upon which the truck was being operated.

It is our conclusion that the alleged collision of the truck comes within the exclusion set out in clause (b). We need not consider whether there was any collision of the cargo because there is also expressly excluded under this clause "any collision of the load with any object."

We next consider whether the loss was caused by "Flood (meaning rising of streams or navigable waters)." A flood is defined in Black's Law Dictionary (Third Edition) as "an inundation of water over land not usually covered by it." One of the definitions given in 36 C. J. S., Flood, page 1028 is: "a body of water rising, swelling, and overflowing land not usually covered with water". To some extent flood is a relative term and we need not undertake here to give an all-inclusive definition.

Under no view would it include the ordinary rising of the tide, which occurs at regular intervals capable of exact determination. It is not alleged in the complaint that there was any tidal wave or any extraordinary flow of the tide at the time in controversy. Appellant apparently concedes that if only the word "flood" had been used, there could be no recovery under clause (e). The argument is made, however,

that we are not called upon to define the word "flood"; that it has been expressly defined in the policy as meaning the "rising of streams or navigable waters"; and that the damage was caused by the rising of navigable waters which comes clearly within the definition given in the policy. At first blush, this argument seems plausible, but upon more mature consideration, we think it clearly appears that the construction advanced by appellant could not have been reasonably within the contemplation of the parties. The proposed construction gives no effect whatsoever to the word "flood" as used in this clause. It is apparent that it was the intention to insure against some hazard. The word "rising" when considered in its context clearly contemplates the abnormal or unusual "rising of streams or navigable waters". The words in parentheses in this clause were intended to limit rather than enlarge the meaning of the word "flood".

We have been unable to find any case, and none has been cited by counsel, involving the precise question now under discussion. While a different question was involved in *St. Paul Fire & Marine Insurance Co. v. Carroll,* Tex. Civ. App., 106 S. W. (2d) 757, 759, the Court there in construing a clause reading, "Flood (meaning the rising of navigable waters)", said that the parties "contracted against loss *by flood* caused by the rising of navigable waters". (Emphasis ours.)

There remains the question of whether appellant's loss comes within clause (f), which reads: "Perils of the seas, lakes, rivers or inland waters while on ferries." Assuming, without deciding, that the loss alleged in the complaint could be said to have resulted from a periol of the sea, for a definition of that phrase see *Clinchfield Fuel Co. v. Aetna Insurance Co.,* 121 S. C. 305, 114 S. E. 543, there could be no recovery under this clause of the policy because it is restricted to perils of the seas "while on ferries". In other words, this clause clearly contemplates a peril incident to navigation, or a loss arising during the course of transportation by water. We do not agree with appellant's

contention that the restrictive phrase "while on ferries" was intended to apply only to the words "rivers or inland waters".

The suggestion is made that the question of coverage should have been submitted to the jury, but we think it was the province of the court to construe the policy.

In reaching the conclusion that there was no coverage in this case, we have not overlooked the well settled rule that the terms of an insurance policy must be construed most liberally in favor of the insured and where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. *Parker v. Jefferson Standard Life Insurance Co.*, 158 S. C. 394, 155 S. E. 617; *Walker v. Commercial Casualty Insurance Co.*, 191 S. C. 187, 4 S. E. (2d) 248; *Harwell v. Mutual Benefit Health & Accident Association*, 207 S. C. 150, 35 S. E. (2d) 160, 161 A. L. R. 183. It is equally well established that in determining the meaning of such a contract, the words should be taken in the plain and ordinary sense in which they are generally used and understood with regard to or in connection with the subject matter involved. The courts are not at liberty to adopt some strained or violent interpretation not contemplated by the parties.

We find it unnecessary to pass upon the sustaining ground advanced by respondent.

The order appealed from is affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.