Argued November 26, affirmed December 31, 1958

ROBERTS *v.* UNION INSURANCE SOCIETY

332 P. 2d 600

*John D. Mosser,* Portland, argued the cause for appellant. With him on the brief were Wood, Matthiessen, Wood & Tatum, Portland.

*Harry A. Harris*, Oregon City, argued the cause for respondent. With him on the brief was Stanley J. Mitchell, Oregon City.

Before PERRY, Chief Justice, LUSK, WARNER and SLOAN, Justices.

WARNER, J.

This is an action on an insurance policy issued by the defendant, Union Insurance Society of Canton, Ltd. It is here on appeal from a judgment for plaintiff following an order overruling the insurance company's demurrer to the complaint after its default in pleading further. The only error alleged is the court's ruling on the demurrer. The question involved is one of coverage.

The facts are simple; plaintiff's Caterpillar tractor, while being operated on the ocean beach near Long Beach, Washington, became stuck in the sand. During this impairment to its further operation, it was "engulfed and flooded over and submerged by the ocean tide" to its damage in the sum of $1,612.95.

From the complaint, we learn that the policy provides coverage for loss or damage to the tractor by "flood (meaning rising waters)."

The sole matter for resolution is whether the rising of the ocean tide in the instant matter is a "flood (meaning rising waters)."

Neither the defendant insurance company nor the plaintiff in their respective briefs and arguments are able to give us much aid. Both confess that there is little authority in point. It is a conclusion in which we must concur after our own independent search.

Appellant cites only one case which approximates the problem now confronting us: *Long Motor Lines, Inc. v. Home Fire & Marine Insurance Co. of Cal.*,

220 SC 335, 67 SE2d 512 (1951), to which we will make later reference. Plaintiff brings none to our aid.

The insurance company, relying primarily upon the Long Motor case, represents that the controverted phrase is limited in meaning to "an inundation of water over land not usually covered by it." The plaintiff, to the contrary, insists that by proper definition, the policy protects against loss or damage by flood from the rising of tidal waters.

We turn to ascertain, if we can, what the flooding situation, if any, was within the contemplation of the parties when they negotiated and executed the insurance contract. We look to the pleadings in vain. The complaint carries no part of the insurance contract except to plead that the "policy agreement provides, among other things, to insure against loss and/or damage to the above described property by 'flood (meaning rising waters).'" There is no pleading of the contract haec verba nor any substantial part of it except the foregoing phrase from whence we might glean something of the intent or contemplation of the parties to it, as provided for in ORS 42.240.①

Coming to us, as the matter does, with the sole assignment of error predicated upon an order overruling a demurrer to the complaint, there is no evidence of the circumstances attending its negotiation and execution which might be of assistance in construing the insurance contract with the possibility of extracting therefrom a precise meaning for the challenged phrase. ORS 42.220.②

---

① ORS 42.240. In the construction of an instrument the intention of the parties is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it.

② ORS 42.220. In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language he is interpreting.

We have already noted the paucity of legal literature to which we may turn for help. The little available supplies no definition of the phrase which may be said to be of "primary and general acceptation." (ORS 42.250) Nor are we able to say that the phrase appearing in the policy has a meaning "naturally and popularly understood" (*Boyd v. Olcott,* 102 Or 327, 363, 202 P 431), or that it can be said to suggest a meaning naturally plain and of obvious significance (*City of Portland v. Meyer,* 32 Or 368, 370, 52 P 21) such as would imply one meaning to the exclusion of any other. Indeed, the word, "flood," standing alone has been declared to be a relative term (*City of Tulsa v. Grier,* 114 Okla 93, 243 P 753, 757), and Black's Law Dictionary (4th ed) p 768, speaks of the word as one "of variable meaning."

Under the circumstances, we turn to dictionaries of general acceptation. The ones hereinafter referred to give a variety of definitions for the word, "flood." At least from four to six of those found in each work embrace the concept of "rising waters." But included in all of them we find that each gives to the noun, "flood," the definition which comports with that which the plaintiff urges here. In Webster's New International Dictionary (2d ed), we read that a "flood" can be "the flowing in of the tide; the semidiurnal swell or rise of water in the ocean; opposed to ebb." Likewise, in Funk & Wagnall's New Standard Dictionary, a "flood" is said to be "the semidiurnal coming in of the tide, as opposed to the ebb; especially, the tide at its height; high tide." The Century Dictionary states as one of its several definitions for "flood," "the inflow of the tide; the semidiurnal rise or swell of water in the ocean; opposed to ebb." The first

meaning for "flood" found in the Oxford English Dictionary is: "The flowing in of the tide."

Thus, we are left to choose from several definitions of "flood," one having the element of "rising waters," which seems most appropriate here.

■ "It is clearly within the province of the insurer to decide what it will insure against and what it will not." *Clark Motor Co. v. United Pac. Ins. Co.,* 172 Or 145, 149, 139 P2d 570. It had the opportunity to have limited its risk, if it so desired, by amplifying the exclusionary phrase by adding, for example, "excepting tidal waters." It is not for us to speculate on its reasons for not doing so, but we submit that it is within the realm of possibility that the insurance company may have known of the very kind of risks to which the instant heavy machine might be exposed at its places of use and have intended the very coverage for which plaintiff seeks recovery and may have protected itself with a commensurate premium. We note that a Caterpillar Tractor is a motor propelled vehicle used for the hauling of heavy burdens, usually off of the highway, and frequently remains for use in limited areas for limited times, as in construction or industrial enterprises. We take note, too, that the complaint alleges that it "became stuck in soft sand while being *worked* on the beach * * *." (Emphasis ours.) In this respect, it is unlike the carrier which was the subject of coverage in *Long Motors, Inc. v. Home Fire & Marine Ins. Co.,* supra, where that vehicle was employed in the transport of furniture in connection with plaintiff's transportation business.

■ This court has held that "words, having been selected by the insurer, if they are susceptible of more than one construction, are to be construed most strongly against the insurer." (*Nugent v. Union Auto*

*Ins. Co.,* 140 Or 61, 65, 13 P2d 343; 1 Restatement 328, Contracts § 236.) Here we find by recourse to the dictionaries that the word, "flood," is susceptible to several meanings, all consonant with the characteristic of "rising waters," including the one contended for by plaintiff.

■ We have also said: "Any reasonable doubt as to the meaning of the policy must be resolved in favor of the insured." *Clark Motor Co. v. United Pac. Ins. Co.,* supra (172 Or at 149), and cases there cited; *Medford v. Pac. Nat'l Fire Ins. Co.,* 189 Or 617, 628, 219 P2d 142, 222 P2d 407, 16 ALR2d 1181.

The foregoing rule "finds frequent application in regard to policies of insurance, which are ordinarily prepared solely by the insurance company, and therefore, the words of the policies are construed most strongly against it." 1 Restatement, supra, at 330. See, also, *Schweigert v. Beneficial Life Ins. Co.,* 204 Or 294, 301, 282 P2d 621, where we held that the language used in a contract of insurance is entitled to a construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed to support a view that will protect the insured. We there quoted with approval the following statement of Mr. Justice Stone in *Stipcich v. Metropolitan Life Ins. Co.,* 277 US 311, 322, 72 L ed 895, 900, 48 S Ct 512, who, in construing a policy issued in Oregon, said, "* * * But narrow and unreasonable interpretations of clauses in an insurance policy are not favored. They are prepared by the insurer and if, with equal reason, open to two constructions, that most favorable to the insured will be. adopted. * * *" (204 Or at 300). These holdings are in harmony with ORS 42.260, where we find: "* * * When different constructions of a pro-

vision [of an agreement] are otherwise equally proper, that construction is to be taken which is most favorable to the party in whose favor the provision was made."

■ These rules when applied in the matter at bar, compel a rejection of the insurance company's construction of the phrase, "flood (meaning rising waters)," and the adoption of the construction contended for by plaintiff.

We have examined *Long Motor Lines, Inc. v. Home Fire & Marine Insurance Co. of Cal.,* supra (67 SE2d 512), upon which the defendant places great reliance. But we do so without finding it difficult to distinguish it from the instant case, notwithstanding its many striking factual similarities.

In the Long Motor Lines case, a moving van loaded with furniture was driven on an ocean beach and, like plaintiff's tractor, became stuck or imbedded in the sand. As in the instant matter, while so confined, the tide rose and the furniture was damaged by the salt water. The plaintiff-assured in that case was covered by a policy which provided against loss by: "Flood (meaning rising of streams or navigable waters)." The owner of the furniture recovered damages from the plaintiff trucking company which, in turn, sued upon the policy. The case went to the South Carolina Supreme Court on an appeal by the plaintiff from an order sustaining a demurrer to its complaint and was there affirmed.

In that opinion, the court relies on a definition of "flood" found in Black's Dictionary to the effect that it is "an inundation of water over land not usually covered by it" and one from CJS of similar import. It ignored the character of the word as a relative term and particularly as also stated by Black as a

word "of variable meaning" and ignores the well-established rules of construction which we apply here. The court also observes: "* * * we think it clearly appears that the construction advanced by appellant could not have been reasonably within the contemplation of the parties." (67 SE2d at 515) From the information gathered from the opinion alone, this appears to us as a gratuitous conclusion, in that the record there before the court, consisting solely of the pleadings and no evidence, was in substantially the same posture as the record in the instant case comes to us; that is, with no guides to what, indeed, were or were not in the contemplation of the parties concerning the meaning of the challenged phrase. This is true unless it can be said that the court's determination of what was in the contemplation of the parties was to a degree justified by a concession made by the plaintiff, the court saying: "* * * Appellant apparently concedes that if only the word 'flood' had been used, there could be no recovery * * *." The force of such conclusion is that the word, "flood," standing alone, did not, in the mind of the plaintiff truck line, comprehend inundation from tidal waters. Plaintiff here makes no such concession.

We allow the plaintiff the sum of $150 as reasonable attorney fees for the services rendered in this court. ORS 736.325(2).

AFFIRMED.

LUSK, J., concurs in the result.

PERRY, C. J., dissenting.

I must dissent from the majority opinion for the reason that I am unable to distinguish the construction of a similar contract set out in *Long Motor Lines, Inc. v. Home Fire & Marine Insurance Co. of Cal.,*

220 SC 335, 67 SE2d 512, from the construction that should be placed upon the policy in this case. I believe the South Carolina case was rightly decided and that our construction does violence to ORS 42.250, "The terms of a writing are presumed to have been used in their primary and general acceptation, * * * ."