**LARSON CONSTRUCTION COMPANY,** an Oregon corporation, and R. C. Larson, Plaintiffs,

v.

**OREGON AUTOMOBILE INSURANCE CO.,** an Oregon corporation, Defendant.

Civ. No. 67–560.

United States District Court
D. Oregon.

March 21, 1969.

Floyd A. Fredrickson, Gray, Fredrickson & Heath, Portland, Or., for plaintiffs.

George M. Joseph, Morrison & Bailey, Portland, Or., for defendant.

## OPINION AND FINDINGS

KILKENNY, District Judge:

This is an action on a comprehensive liability policy, which policy of insurance was issued by the defendant to the plaintiffs, insuring, among other things, their operations upon navigable waters of the United States. The loss with which we are here concerned, occurred while plaintiffs were engaged in the loading of a barge upon the Columbia River, a navigable water of the United States, when plaintiffs' employee was injured. The barge was being loaded pursuant to an oral contract with the consignor of the logs.

Both plaintiffs and defendant are Oregon corporations. Plaintiffs were, and are, engaged in the business of construction work on navigable waters of the United States.

In addition to the comprehensive policy of defendant, plaintiffs had a Workmen's Compensation and Common Law Liability Policy with the Underwriters at Lloyd's of London. This policy was in full force and effect at the time of the accident in question.

The employee of the plaintiffs was injured while working on the barge. Later, he filed an action against Shaver Transportation Company, the owner of the barge on which plaintiffs were loading the logs at the time of the injury. Thereafter, Shaver tendered to, and plaintiffs accepted, the defense of the action. Subsequently, the plaintiffs tendered the defense to defendant. Defendant denied coverage or any duty to defend under its policy on the basis of Ex-clusions (b), (c) and (d) of its insurance contract. The action by the employee against Shaver was settled by plaintiffs. The parties agree that the settlement was reasonable.

## JURISDICTION

First, defendant contends that the case is not within the maritime jurisdiction of the Court. I disagree. Defendant's contention that Exclusion (f), with reference to "loading or unloading of (1) watercraft *away from the premises* used by the assured * * *" is tenuous in the extreme. The argument entirely overlooks the mobile nature of plaintiff's maritime business. *Its premises* moves from place to place to accommodate the performance of the particular undertaking. Admiralty jurisdiction over contracts exists when the subject matter of the contract is maritime in nature. It must be conceded that the subject matter of marine insurance is maritime ventures. Under the facts here present, I have no difficulty in finding that defendant's policy of insurance assures against maritime risks and is thus marine in nature. Jeffcott v. Aetna Ins. Co., 129 F.2d 582 (2d Cir. 1942), cert. denied 317 U.S. 663, 63 S.Ct. 64, 87 L.Ed. 533. Additionally, "mixed" contracts of insurance covering both maritime and non-maritime risk are, in proper cases, subject to admiralty jurisdiction. Berwind-White Coal Mining Co. v. City of New York, 135 F.2d 443 (2d Cir. 1943); Compagnie Francaise de Navigation A Vapeur v. Bonnasse, 19 F.2d 777 (2d Cir. 1927), cert. denied American Exchange Irving Trust Co. v. Bonnasse, 275 U.S. 551, 48 S.Ct. 114, 72 L.Ed. 421. Indeed, this seems to be a rule of general application. Gilmore & Black, Admiralty, §§ 1–9, pp. 26–28. Although American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947), on first impression would seem to point in the opposite direction, the statement by the Supreme Court that jurisdiction over such contracts is "doubtful", is purely dictum.

## LIABILITY

The exclusion, on which defendant relies, in pertinent part, reads:

"This policy does not apply under Part I:"[1]

\* \* \* \* \* \*

(b) to liability assumed by an insured under any contract or agreement, except a contract as defined herein; \* \* \*."

The definition reads thus:

"Contract means (a) as respects bodily injury, a warranty of goods or products or if in writing any contract or agreement. \* \* \*"

■ To be conceded is plaintiffs' contention that exclusions are to be construed against an insurance company. However, the rule should not be applied unless the language of the exclusion is ambiguous. The most recent Oregon case stating this rule is Ausman v. Eagle Fire Ins. Co., 86 Or.Adv.Sh. 1193, 444 P.2d 18 (July 24, 1968).

■ For the moment, we will consider only that portion of the definition section which provides coverage on the contracts in writing only. This language would seem to preclude a recovery on an oral contract, such as existed between Larson and Shaver.

Manifestly, the indemnity agreement on which plaintiffs prosecute this action is contractual in nature. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). In Ryan, the Supreme Court held that the obligation to indemnify was not a quasi-contractual obligation implied in law or arising out of a non-contractual relationship, but was of the very essence of the stevedoring contract. Here, Shaver was performing stevedoring service for Larson at the time the injury occurred.

Both plaintiffs and defendant seem to find comfort in the language of Indemnity Ins. Co. of North America v. California Stevedore & Ballast Co., 307 F.2d 513 (9th Cir. 1962). Although the case is not directly in point, I believe the logic inherent in the decision supports the view that Exclusion (b) is applicable to these facts and that liability is excluded. In California Stevedore, the Court held that the liabilities assumed were under written contracts and that indemnity should be enforced within the coverage extended by the insurance policies. The converse of the holding in California Stevedore is that a general exclusion, such as here, requiring a written contract would be effective.

Citing Larsen v. General Cas. Co. of Wisconsin, 99 F.Supp. 300 (D. Minn. 1951), aff'd. 196 F.2d 170 (8th Cir. 1952); Lumbermen's Mutual Cas. Co. v. Town of Pound Ridge, 362 F.2d 430 (2d Cir. 1966); United States Fidelity & Guaranty Co. v. Virginia Engineering Co., 213 F.2d 109 (4th Cir. 1954), and others, plaintiffs argue that the exclusion clause in question, excludes only those liabilities which the insured might expressly contract to assume. In other words, the clause does not exclude liability "from the operation of the law upon the service contract." I am not impressed with these authorities. They do not face up to the doctrine taught in Ryan and Crumady, but apply the common law theory of subrogation in certain instances of negligence. For example, a contractor who undertakes to perform a service, or to do a job, may breach his duty of due care and thus be subject to both tort and contractual liability. In certain circumstances, the injured party may proceed under either theory. Here, however, as taught by Ryan and Crumady, the ship charterer's right of action against the contractor is based upon contract and not on a negligence theory. Otherwise, the Longshoremen's and Harbor Workers' Compensa-

---

1. The liability section.

tion Act would apply and would prevent recovery in the first instance.

DeGioia v. United States Lines Co., 304 F.2d 421 (2d Cir. 1962), does not, in my judgment, detract from, or in any way modify, the direct statements in *Ryan* and *Crumady* that the indemnity agreement between the stevedore and the shipowner is contractual in nature. True enough, certain language in *De-Gioia* might indicate otherwise. However, this language was entirely unnecessary to the decision. Moreover, if we carry the dicta of *DeGioia* to its logical conclusion, we would face the problems arising under the Longshoremen's and Harbor Workers' Compensation Act.

Additionally, the plaintiffs contend that Exclusion (b) is ambiguous when applied to the work being performed by Shaver. The parties agree that Shaver was engaged in the construction business. Stevedoring was not his line. In addition to requiring the contract to be in writing, the definition part of the insuring agreement would provide coverage for bodily injury on "a warranty of goods or products". It is plaintiffs' contention that the word "products", as here used, is ambiguous and that the work performed under the stevedoring contract might well be within what was intended by the parties at the time the policy was issued.

"Products" is defined in the policy thus:

"(a) the handling or use of or the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by an insured (other than equipment rented to or located for use of others but not sold) *if the occurrence takes place after an insured has relinquished possession thereof to others* and away from premises owned, rented, or controlled by an insured;

(b) operations, *if the occurrence or accident takes place after such operations have been completed or aban-*doned at the place of occurence thereof *and away from premises owned, rented, or controlled by an insured except * * *"*. (Emphasis supplied.)

To me this definition of the word "products" makes clear the meaning of the word in the context of the whole contract. While the plaintiffs in carrying out their contracting business might be subject to subpart (a) in the above definition, it is crystal clear that plaintiffs were not dealing in goods or products in performing a stevedoring operation and, of greater significance, the injury to the employee did not take place after the insured had relinquished possession of the logs. It is undisputed that the accident occurred during the performance of the operation. Inasmuch as the logs were being loaded and the operation had not been completed, nor abandoned, subpart (b) of the definition of "products" is of no help to plaintiffs. The exclusion is not ambiguous and I so find.

■■■ . While the language of an insurance policy must be construed in favor of the assured, Kaifer v. Georgia Cas. Co., 67 F.2d 309 (9th Cir. 1933); Roberts v. Union Ins. Soc. of Canton, 215 Or. 183, 332 P.2d 600 (1958), and this rule is most strictly applied in connection with an exclusion clause, I-L Logging Co. v. Manufacturers & Wholesalers Indemnity Exchange, 202 Or. 277, 273 P.2d 212, 275 P.2d 226 (1954), we must always keep in mind that an unambiguous insurance policy, like any other contract, must be enforced according to its terms. Bradley v. Prudential Ins. Co. of America, 70 F.2d 988 (9th Cir. 1934). Moreover, if the language of the exclusion clause is plain and unambiguous, the clause must be given full force and effect. Clark Motor Co. v. United Pac. Ins. Co., 172 Or. 145, 139 P.2d 570 (1943), and it is my duty to construe and enforce the insurance contract in the manner in which the parties have agreed. Smith v. Germania Fire Ins. Co. of New York, 102 Or. 569, 202 P. 1088 (1922).

The above makes unnecessary a finding or a conclusion on the other issues raised by the defendant. This opinion shall serve as my findings and conclusions. Defendant is entitled to a dismissal of the action.