**LARSON CONSTRUCTION COMPANY, an Oregon corporation, and R. C. Larson, Plaintiffs-Appellants,**

v.

**OREGON AUTOMOBILE INSURANCE CO., an Oregon corporation, Defendant-Appellee.**

**No. 24351.**

United States Court of Appeals, Ninth Circuit.

Aug. 3, 1971.

As Amended Dec. 7, 1971.

Rehearing Denied Dec. 15, 1971.

Floyd A. Fredrickson (argued), Gray, Fredrickson & Heath, Portland, Or., for plaintiffs-appellants.

George M. Joseph (argued), Bemis, Breathouwer & Joseph, and Morrison & Bailey, Portland, Or., for defendant-appellee.

Before KOELSCH and CARTER, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge.

Koppers Company, the owner of a cargo of logs, employed Larson Construction Company (hereafter Larson) to load the logs aboard a barge owned and operated by Shaver Transportation Company (hereafter Shaver). In the course of the loading, one of Larson's employees, Gray, was injured. Gray sued Shaver, and Shaver, who claimed that Larson was responsible on an indemnity theory, tendered the defense to Larson. Ultimately Shaver settled the Gray claim for $43,366.76, and Larson paid $38,366.76 to Shaver in settlement of Shaver's indemnity claim against Larson. It was stipulated that the settlements were reasonable. Larson referred the Shaver claim against it to the Oregon Automobile Insurance Co. (hereafter Oregon Insurance) which had issued a comprehensive general liability policy to Larson. Oregon Insurance denied coverage and this action was brought by Larson to recover the amount paid Shaver plus attorney's fees. The District Court entered a judgment dismissing the complaint, 301 F. Supp. 1112, and this appeal followed. The questions presented are questions of law involving the construction and application of the Oregon Insurance policy.

The policy in question obligates Oregon Insurance "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"COVERAGE 'A'—BODILY INJURY LIABILITY."

The policy excludes from this coverage:

"(b) * * * liability assumed by an insured under any contract or agreement * * *;

"(c) * * * bodily injury of an employee of an insured arising out of and in the course of * * * (2) * * * employment by an insured * * *"

We turn first to exclusion (b). Was the liability running from Larson to Shaver a " * * * liability assumed by an insurer under any contract or agreement * * *"? As a prelude to the search for the meaning of the quote phrase we note that since 1956 a stevedore has been liable to indemnify the shipowner sued by the stevedore's employees injured aboard ship.[1] This risk is one of the facts of life in the insurance business and is the kind of risk that the prudent stevedore would insure. In this connection we note that the policy involved is described as a "comprehensive liability policy" and that on the face of

* The Honorable Russell E. Smith, Chief Judge of the United States District Court for the District of Montana, sitting by designation.

1. Ryan Stevedoring Co. v. Pan-Atlantic SS Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

the policy there appears in large print these words:

"Your Agent  *  *  *

FILLS YOUR INSURANCE NEEDS WITH THE BROADEST COVERAGE. * * *"

We emphasize the fact that there was no contract between Larson and Shaver and that Larson's liability to Shaver[2] must rest upon something other than words passing between them or conduct of one directed to the other. Where, as here, we are concerned with the meaning of words used by the parties in an insurance policy, it is not particularly important that at some time and under some circumstances the courts have termed the obligation running from the stevedore to the shipowner as contractual although not necessarily exclusively so;[3] as based in a warranty not limited to the confines of a contract;[4] or in a somewhat analogous situation as a quasi-contractual liability.[5] Larson's liability is in fact a liability imposed by law.

■ In searching for the meaning of the word "contract" as used in exclusion (b), we are mindful of the rule that in a writing, under Oregon law which controls as to the meaning of the policy,[6] words are presumed to be used in their primary and general acceptation.[7]

By its primary meaning the word "contract" denotes an agreement between the parties.[8] Obligations imposed by law without reference to an agreement when mentioned in the reference works defin-

ing contracts appear under the terms "contracts implied in law" or "quasi-contracts", usually with a statement to the effect that such contracts are not true contracts.[9]

■ The use of the word "assume", which means "to take to or upon oneself",[10] confirms the thought that exclusion (b) is to be taken to exclude liabilities created by the explicit and voluntary acts of the parties rather than those liabilities imposed upon them by law. At the very least the language is sufficiently ambiguous to invoke the rule that where there is doubt as to the meaning of an insurance policy, the words are to be construed most strongly against the insurer and in favor of the insured. Roberts v. Union Ins. Society, Ltd., 215 Or. 183, 332 P.2d 600 (1958). We conclude that coverage is not excluded by exclusion (b).

■ We turn to exclusion (c). The word in the insuring clause, " *  *  * all sums which insured shall become legally obligated to pay as damages because of  *  *  * BODILY INJURY *  *  *", standing alone, and without reference to the exclusions, is broad enough to cover first, the liability to an employee because of injuries suffered by him and second, the liability to a third person which has its origin in bodily injuries suffered by the employee. The problem here arises because the exclusion does not refer to " *  *  * all sums which the insured shall become le-

2. See Waterman SS Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

3. Ryan Stevedoring Co. v. Pan-Atlantic SS Corp., *supra;* Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969).

4. DeGioia v. United States Lines Co., 304 F.2d 421 (2nd Cir. 1962).

5. Simpson Timber Co. v. Parks, 390 F.2d 353 (9th Cir. 1968), cert. denied, 393 U.S. 858, 89 S.Ct. 126, 21 L.Ed.2d 127 (1968).

6. Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

7. O.R.S., 1969, § 42.250; Nugent v. Union Automobile Ins. Co., 140 Or. 61, 13 P.2d 343 (1943).

8. *See* 1 Bouv. Law Dict. (Rawle's Third Revision 1914); Webster's Third New International Dictionary (1966); 17 C.J.S. Contracts § 1 p. 537 (1963).

9. *See* Bouvier's, *supra*, at 661; and 17 C.J.S. Contracts § 4 (1963).

10. Bouvier's *supra*, Webster's Third New International Dictionary; 7 C.J.S. Assume p. 105 (1937).

gally liable to pay as damages because of * * * BODILY INJURY LIABILITY," but simply makes the coverage inapplicable to " * * * bodily injury to any employee. * * * " As we see it, the language of the exclusion is somewhat narrower than the language of the insuring clause and while the meaning is not clear, the exclusion could be interpreted to refer to no more than the damages suffered by the employee himself. Because of workman's compensation and similar laws, the employee presents a special kind of risk ordinarily insured by a special policy devoted exclusively to that risk or in some cases by deposits ordered by the officers administering the workman's compensation or similar law. A person examining exclusion (c) might reasonably believe that it was intended to exclude only that special employee hazard normally covered by that special policy. In view of the special treatment of the employee hazard, the differences between the words used in the insuring and the exclusion clauses and the fact that the risk here was a known risk, we hold that the exclusion (c) was not spelled out with sufficient certainty to eliminate the coverage in this case.

The result which we reach is in accord with, although not compelled by, the decision in Indemnity Ins. Co. v. California Stevedore & Ballast Co., 307 F.2d 513 (9th Cir. 1962). In that case the Court relied upon the existence of a contract between the stevedore and shipowner and a clause in the policy assuming liability under written contracts. There is no contract here. Notwithstanding, we hold that if the liability of the stevedore to the shipowner is not to be insured in a comprehensive liability policy then that risk should be excluded in unmistakable terms no matter what words may be used to rationalize the imposition of the stevedore's liability.

The trial court did not reach the problem created by defendant's claim that Larson had other insurance which was applicable to the loss and that by reason of the other insurance clause in the Oregon Insurance policy the damages should be prorated. In view of our disposition of the liability issue, the proration problem must now be solved. The judgment is reversed and the case is remanded to the district court for further proceedings not inconsistent herewith.