Argued September 24; reversed October 19; rehearing denied
November 16, 1937

# KANTOLA *v.* LOVELL AUTO CO.

(72 P. (2d) 61)

*A. C. Fulton,* of Astoria ( G. C. & A. C. Fulton, of Astoria, on the brief), for appellant.

*F. M. Franciscovich,* of Astoria (Hesse & Franciscovich, of Astoria, on the brief), for respondent.

RAND, J.   The plaintiff brought this action to recover damages for injuries received in a collision be-

tween an automobile in which she was riding and one belonging to the defendant, which was then being driven by one John Kildall, a boy about 15½ years of age. It is alleged in the complaint, and for the purpose of this case we shall assume, that the boy's negligence caused the accident. The case is here upon an appeal from a judgment in favor of the plaintiff.

The defendant is a corporation engaged in the business of buying and selling new and used cars in Astoria and the car in question was a used car. It appears from the evidence, and it is undisputed, that just prior to the accident the defendant, with the consent of the boy's mother, delivered the car to the boy for the purpose of having him show it to his mother in order to induce her to purchase it for him so that he could use it in distributing a magazine, the agency of which he expected to secure. Once before the same car had been delivered to the boy for the same purpose and at that time he had driven his mother to church.

The evidence further shows that one of defendant's salesmen had on several occasions called on the mother for the purpose of selling this particular car to her.

It is undisputed that the boy was not in the employ of the defendant company and that the car was delivered to him for the special purpose above stated.

The plaintiff contends that the transaction of delivering the car to the boy for that special purpose and the benefit which would have resulted to the defendant had the mother purchased the car were sufficient to constitute the boy as an agent of the defendant and to render the defendant liable for the boy's negligence.

We think that the transaction created a bailment and not an agency, and that, if the boy was the agent of anyone, he was the agent of his mother for whom he was acting.

■ "Agency", as defined by the American Law Institute, Restatement of Agency, section 1, "is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act".

■ It appears from the evidence that on the day of the accident the boy applied to the manager of the defendant company for permission to take the car and stated to him that he wanted to take the car and show it to his mother and have her purchase it for him so that he could use the same for the purpose above stated, and was informed he could not take the car unless he first obtained the consent of his mother to his so doing; that the boy then went away and in a few moments returned and stated that his mother consented to his taking the car for that purpose; that the car was then delivered to the boy and that he drove it away, and, from that time on until after the accident, it was under the exclusive control of the boy and nothing done by him in the operation of the car was done in the presence of any officer, agent or employee of the defendant company.

It is clear that after the boy had received delivery of the car and driven it away the defendant company could exercise no control, either actual or potential, over its operation and, therefore, was not responsible for the boy's negligence in the absence of the relationship of principal and agent or master and servant.

In an analogous case, *Gulf Refining Co. v. Ray Motor Co.,* 129 Me. 499 (152 Atl. 226), one Whelden, who was considering the purchase of an automobile, went to defendant's place of business and was shown by a salesman of the defendant a secondhand car. Whelden and

the salesman took the car out and drove it a short distance, when Whelden said it appeared to be all right but that he would like to have his wife see it and asked the salesman to drive it over and show it to his wife, but the salesman said he was unable to do so and told Whelden to take the car over himself. Whelden drove away with the car, got drunk, had a collision and, as the opinion recites, "ended his adventure in jail". It was contended there as here that the transaction made Whelden an agent of the company. In denying this contention, the court said:

"To hold that he was acting as agent for the company in persuading his wife to buy the car, not only finds no support in the evidence, but contemplates a relationship of the parties which even to the casual observer seems absurd."

■■ A commonly accepted definition of bailment is a delivery of something of a personal nature by one party to another, to be held according to the purpose or object of the delivery, and to be returned or delivered over when that purpose is accomplished: Bouvier's Law Dictionary, p. 213. According to this definition, the transaction involved here was a bailment.

■ As a general rule, a bailor not in control of the subject of the bailment is liable to a third person negligently injured thereby only in case he himself, or some one acting for him, has been negligent in respect to some duty owed to such person or to the class to which he belongs: 6 Am. Jur., section 312, p. 395. See also *Eklof v. Waterston,* 132 Or. 479 (285 P. 201, 68 A. L. R. 1002).

As pointed out in 6 Am. Jur., section 313, "the relationship of bailor and bailee is not, as such, within the doctrine of *respondeat superior*; at common law it

seems to be very well settled, both in bailments for gratuitous use and in lettings for hire, that the bailor cannot be held responsible to a third person for injuries resulting from his bailee's negligent use of the bailed chattel, in the absence of any control exercised by the bailor at the time or of negligence of his own which proximately contributed to the injuries. Such a liability could only be sustained on the theory that a bailor stands in the relation of principal or master to the bailee, and, as has been observed previously, such a relationship does not exist in the ordinary case of bailment''.

Notwithstanding that it appeared from the undisputed evidence in this case that Kildall, the driver of the offending automobile, was not the agent or servant of the defendant and also that the defendant had no control over the automobile at the time of the accident, the plaintiff contends that the jury could rightfully disregard this undisputed evidence and hold the defendant to be liable for the negligence of the driver upon the mere inference that, since the defendant had been shown to be the owner of the automobile, the driver was in fact the agent of the owner and engaged in its business. If this could be true, then in every case where the jury was entitled to draw an inference from any undisputed fact in evidence, the court, after such inference had been rebutted and shown to be ill-founded, would be powerless to direct a verdict in favor of the party against whom the inference, if unrebutted, could have been drawn. In support of this contention, the plaintiff cites *Judson v. Bee Hive Auto Service Co.,* 136 Or. 1, 5 (294 P. 588, 297 P. 1050, 74 A. L. R. 944); *Miller v. Service & Sales Co.,* 149 Or. 11 (38 P. (2d) 995, 96 A. L. R. 628); and *Steel v. Hemmers,* 149 Or.

381 (40 P. (2d) 1022). We do not think that those or any other cases go to that extent.

■ It is true that where there is no proof of liability for an injury caused by the negligent operation of an automobile, except the mere fact that the ownership of such automobile is in the defendant, there being no evidence to rebut the inference that the driver of the automobile was at the time engaged in the business of the owner, the jury would be entitled to infer that the driver was so engaged and predicate liability upon the owner for the injury caused by the negligence of such driver.

■ But where, as here, the uncontradicted evidence shows that the driver was not acting for or in the business of the owner and it was also shown that the owner was not present and had no control over the operation of the automobile, the inference was rebutted and at an end and, since there was no other ground of liability claimed against the defendant, it was the duty of the court, when requested by the defendant, to direct a verdict in its favor.

■ As pointed out by Mr. Justice MOORE in *Consor v. Andrew,* 61 Ore. 483 (123 P. 46):

"Presumptions serve a most useful and indispensable part in the correct decision of many questions, but they are out of place when the facts are known or are admitted."

To the same effect, see *French v. State Industrial Accident Commission,* 156 Or. 443 (68 P. (2d) 466).

■ A like rule applies to inferences and, since the facts were known in the instant case and it was not disputed as to the capacity in which Kildall was acting, the court should have directed a verdict for the defendant.

In 5 Am. Jur., section 353, p. 694, the authors say:

"At common law, liability for the negligent use of an automobile by one other than the owner cannot be predicated against the owner merely because of such ownership."

It is stated by the author in Huddy, Encyc. of Automobile Law, (9th Ed.), vol. 7-8, at page 297, that:

"It is clear that, when the owner of an automobile permits another to have the possession and use of it as a bailee, the owner is not liable for the negligent conduct of such bailee. In such a case, the borrower, not the owner, is the person liable for negligence in its operation."

It is not even suggested in the record that Kildall was an incompetent driver or, if incompetent, that the defendant had knowledge of that fact. Nor is it suggested that he was an unlicensed driver or that the automobile was out of repair and not suitable for the purposes for which it had been delivered to Kildall. There was, therefore, no ground upon which the bailor could be held liable for the negligence of the bailee. We hold, therefore, that the failure of the court to direct a verdict as requested by the defendant was error.

The judgment, therefore, will be reversed and the cause remanded to the court below with instructions to dismiss the action, neither party to recover costs in this court.

BEAN, C. J., and BAILEY and LUSK, JJ., concur.